```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/24/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                       :

     - against -                                   :          **OPINION AND ORDER**

REZA ERIC NOURI,                               :          07 Cr. 1029 (DC)
                                                                                                15 Civ. 2052 (DC)

               Defendant.                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**        PREET BHARARA, ESQ.
                                  United States Attorney for the
                                  Southern District of New York
                                  By:    Christine I. Magdo, Esq.
                                           Assistant United States Attorney
                                  One Saint Andrew's Plaza
                                  New York, New York 10007

                                  HARRIS, O'BRIEN, ST. LAURENT & CHAUDHRY LLP
                                  Attorneys for Defendant
                                  By:    Beth Farber, Esq.
                                            Priya Chaudhry, Esq.
                                  111 Broadway, Suite 1502
                                  New York, New York 10006

**CHIN, Circuit Judge:**

           In this case, a jury convicted defendant Reza Eric Nouri ("Nouri") of securities fraud and bribery violations, and I sentenced him principally to eighteen months' imprisonment. He was granted bail pending appeal, and he was ordered, in the event of affirmance, to surrender to a facility designated by the Bureau of Prisons ("BOP") within forty-five days after the mandate issued. The conviction was affirmed, but BOP never designated a facility. Hence, Nouri never surrendered. Two years have elapsed since the issuance of the mandate.

           Nouri moves pursuant to 28 U.S.C. § 2255 to vacate his sentence. He contends that his life has changed in the five years since he was sentenced: He has relocated to California,

married, and become the primary caretaker of his two stepchildren. He has led, he contends, a law-abiding and productive life, while under the constant supervision of the Pretrial Services Department. He asks that his sentence be vacated and that he be resentenced to a non-custodial sentence. He seeks relief on three theories: 1) due process under the Fifth Amendment; 2) the common law doctrine of credit for time served at liberty; and 3) a writ of error <u>coram nobis</u>, pursuant to the All Writs Act, 28 U.S.C. § 1651(a). For the reasons that follow, the motion is DENIED.

## BACKGROUND

### A.  Procedural History

In 2007, Nouri, his brother Michael Nouri ("Michael"), and others were indicted for securities fraud in connection with their activities at Smart Online, Inc., a publicly traded company that provided internet-based assistance to small businesses. As revealed at trial, Michael spearheaded a fraudulent scheme to artificially manipulate the market price and demand for shares of Smart Online, while Nouri played a lesser role in the scheme. See <u>United States v. Nouri</u>, 711 F.3d 129, 133, 140 (2d Cir. 2013). Nouri, Michael, and another co-defendant went to trial together and were found guilty by a jury on July 2, 2008.

On May 19, 2010, I sentenced Nouri to eighteen months' imprisonment followed by two years of supervised release, an assessment of $500, and $1,132,219.54 in restitution. (Sent. Tr. at 50-51; Am. Crim. J. at 5). The original judgment was filed May 26, 2010, and an amended judgment detailing restitution was filed on October 1, 2010. With the government's consent, Nouri was granted bail pending appeal. (Sent. Tr. at 52). At sentencing, I stated that if and when his conviction was affirmed, Nouri was to "surrender to the appropriate facility designated by the Bureau of Prisons within 45 days after a remand is issued by the clerk." (<u>Id.</u> at

53). The judgment noted my recommendation "[t]hat the defendant be designated to F.C.I. Butner," and it further stated: "Bail granted pending appeal." (Am. Crim. J. at 2).

The Second Circuit affirmed Nouri's conviction on March 4, 2013. Nouri, 711 F.3d 129. The mandate issued on May 3, 2013. BOP, however, did not designate a facility.

On March 18, 2015, Nouri moved pursuant to 28 U.S.C. § 2255 to vacate his sentence, primarily arguing that the delay in the implementation of his sentence violated the Due Process Clause of the Fifth Amendment. Following briefing by both parties, I held a hearing on April 29, 2015. Although I identified at least one factual dispute, the parties declined an opportunity to present additional evidence. I reserved decision. (Hr'g Tr. at 12-16, 25). I also postponed Nouri's surrender date pending a resolution of this motion. (Id. at 2).

**B.     Facts Relating to Nouri's Surrender**

The facts were presented by witness declarations, with some explanation provided by counsel at the hearing. With one exception, the facts are undisputed. As discussed below, in the absence of testimony and the opportunity for cross-examination, I resolve the one factual dispute in favor of Nouri. I make the following findings of fact:

While his appeal was pending, Nouri remained under the active supervision of Pretrial Services and paid his monthly restitution. He regularly reported to Pretrial Services Officer ("PSO") Karyn Franks in North Carolina until 2011, when he received permission to move to California to be with his then-fiancée. (Nouri Decl. at ¶¶ 4-5). His supervision was transferred to California, and he began reporting regularly to PSO Matt Markowski in the Central District of California. (Id. ¶ 12; Markowski Decl. at ¶¶ 1-2).

In the Southern District of New York, when a defendant is sentenced, the Probation Office automatically receives a copy of the judgment from PACER, the electronic

court docketing system. If the defendant is sentenced to a custodial term and given a surrender date, the surrender date is noted in the judgment, and the Probation Office will send the judgment to the United States Marshals Service. The Marshals Service will then notify BOP, which will then designate a facility for the defendant. Once the designation is made, BOP notifies the Probation Office, and the Probation Office then notifies the defendant, who will then surrender by the designated date. (Leopold Decl. at ¶ 2).

When a defendant is granted bail pending appeal, however, the procedure is different. The Probation Office does not automatically receive a copy of the mandate, when a conviction is affirmed, via PACER. Instead, the Probation Office is "usually informed" that the mandate has been issued by the United States Attorney's Office, defense counsel, or Pretrial Services. (Id. ¶ 3).[1]

When the mandate issued in this case on May 3, 2013, an automatic PACER notification of the affirmance was sent to the United States Attorney's Office, Pretrial Services in New York, defense counsel, and the district court. (Hr'g Tr. at 3-5; Tessier-Miller Decl. at ¶ 3; see Leopold Decl. at ¶ 3). The Probation Office, however, was not notified of Nouri's affirmance. (Leopold Decl. at ¶ 3). Francesca Tessier-Miller, a clerk in the Pretrial Services Office in the Southern District of New York, received the PACER notification, but did not alert her supervisor or anyone else because she assumed, "based on the fact that Nouri had not been ordered to surrender, . . . that Nouri was pursuing some further challenge to his conviction." (Tessier-Miller Decl. at ¶ 3). Tessier-Miller is neither a lawyer nor a Pretrial Services officer,

---

[1] In her declaration, Yolette Leopold, an administrative assistant in the Probation Office for the Southern District of New York, states that "the Probation Office is usually informed that the mandate has been issued by either the District Court Judge, the United States Attorney's Office, defense counsel, or by the defendant's Pretrial Services officer." (Leopold Decl. at ¶ 3). As I noted at the hearing, it is not the Court's usual practice to inform the Probation Office of the issuance of a mandate. (Hr'g Tr. at 6).

and she did not appreciate the significance of the issuance of the mandate, nor did she understand what was supposed to happen next. (Hr'g Tr. at 4-5).

Meanwhile, Nouri knew his conviction had been affirmed, and he was waiting for BOP to designate him and set a surrender date. (Nouri Decl. at ¶ 15). Nouri regularly corresponded with Markowski and Franks. (Id. ¶¶ 12, 13). At some point, Nouri told both Markowski and Franks that his conviction had been affirmed and inquired about a surrender date and his "remand." (Id. ¶¶ 12, 13).[2] In one conversation, Franks told Nouri that the clerk had called her to discuss Nouri's bail money, which was still being held by the Court. (Id. ¶ 13).

On July 2, 2014, Tessier-Miller called the United States Attorney's Office seeking information about the status of Nouri's appeal; it appears that the United States Attorney's Office never returned the call. (Tessier-Miller Decl. at ¶ 4; see Hr'g Tr. at 3). The same day, Tessier-Miller called Markowski. (Tessier-Miller Decl. at ¶ 4). There is some indication that this contact was motivated by concern over the Court's continued possession of Nouri's bail money. (Hr'g Tr. at 10-11). The next day, Markowski e-mailed Tessier-Miller and said that he had just spoken to Nouri, who had no updates and had not heard anything further from his counsel. (Tessier-Miller Decl. at ¶ 5).

On February 10, 2015, Tessier-Miller e-mailed Markowski to request that he complete a compliance letter for Nouri and to ask if Nouri had said anything about the status of his case. Markowski responded that Nouri had not recently reported any updates. (Id. ¶ 6(a); Markowski Decl. at ¶ 8(a)-(b)). Markowski then e-mailed and called Nouri to check in, and Nouri said that he was waiting to hear from the BOP about when to start his sentence. (Markowski Decl. at ¶ 8(d)). Markowski then checked Nouri's district court docket, and saw that

---

[2] In contrast, Markowski states that "at no time prior to February 10, 2015, did Nouri inform me he was awaiting a surrender date." (Markowski Decl. at ¶ 9). I give Nouri the benefit of the doubt and accept his version, without making a credibility finding.

-5-

his conviction had been affirmed on May 3, 2013. (Id. ¶ 8(e)). Markowski e-mailed Tessier-Miller to alert her to the ruling, and said that there may have been a miscommunication because Nouri was never told when or where to surrender. (Id. ¶ 8(f); Tessier-Miller Decl. at ¶ 6(b)).

Tessier-Miller immediately called the Probation Office for the Southern District of New York and discussed the situation with Leopold. (Tessier-Miller Decl. at ¶ 6(c); Leopold Decl. at ¶ 4). Leopold called my chambers to advise that Nouri had never been designated to a facility, and asked me to issue an order for Nouri to surrender. (Leopold Decl. at ¶ 5). In an order dated that same day, February 10, 2015, I ordered Nouri to surrender on or before March 25, 2015. I subsequently postponed Nouri's surrender until after a decision on the present motion.

Since his conviction and throughout these events, Nouri has continued reporting to Markowski, mostly over the telephone or via e-mail. (Nouri Decl. at ¶¶ 12-13). In the five years that have elapsed since his sentencing, he has changed his life significantly. In 2013, after relocating to California, Nouri married his fiancée of five years. (Id. ¶ 6). He is the primary caretaker of his two stepchildren and does the cooking, cleaning, laundry, and shopping for his family. (Id. ¶¶ 7-8). While his elderly parents reside in North Carolina, Nouri is involved in their daily lives and manages their medical care. (Id. ¶ 10). Nouri has not traveled outside the area since moving to California, and he has no violations of his pretrial release. (Id. ¶¶ 16-17).

### DISCUSSION

I address Nouri's three claims in turn: 1) due process under the Fifth Amendment; 2) the common law doctrine of credit for time served at liberty; and 3) a writ of error coram nobis, pursuant to the All Writs Act, 28 U.S.C. § 1651(a).

### A. Due Process

Nouri argues that because his imprisonment has been delayed for some two years, the government has waived jurisdiction over him and his due process rights would be violated if he were required to serve his eighteen-month sentence now.

#### 1. Applicable Law

Government errors in the proper execution of a defendant's sentence -- erroneous release, failure to remand, etc. -- have occasionally led courts to question the constitutionality of requiring a defendant to serve his full sentence. Traditionally, such cases are grounded in the common law theory of "waiver": Where the state's actions are "so affirmatively wrong or its inaction so grossly negligent," the state has effectively waived jurisdiction over a defendant because it would be inconsistent with "fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction." Piper v. Estelle, 485 F.2d 245, 246 (5th Cir. 1973) (per curiam) (internal quotation marks omitted); see Sheldon v. Ciccone, 578 F.2d 1241, 1244-46 (8th Cir. 1978) (remanding to determine whether seven-year delay in imposition of sentence due to government's gross negligence constituted waiver of government's jurisdiction over defendant); Shields v. Beto, 370 F.2d 1003, 1004-06 (5th Cir. 1967) (holding that twenty-eight-year delay in sentence due to government error constituted waiver of government jurisdiction and violation of due process); United States v. Merritt, 478 F. Supp. 804, 806-08 (D.D.C. 1979) (holding that requiring defendant to complete sentence three years after his accidental release would shock the conscience). For example, a district court has applied the waiver theory where a defendant's state and federal sentences were intended to be consecutive, but the government failed to initiate the federal sentence until three years after the defendant was released from state custody. The court noted that "[u]nder some circumstances, a

government's delay in executing a sentence may constitute a waiver of jurisdiction over an individual under an otherwise valid criminal sentence, such that the fundamental principles of liberty and justice secured by the Due Process Clause of the Fifth Amendment would be violated by requiring that individual to serve the sentence." United States v. Mercedes, No. 90-CR-450 (RWS), 1997 WL 122785, at *3 (S.D.N.Y. Mar. 17, 1997) (internal quotation marks omitted); see United States v. Mercedes, No. 90-CR-450 (RWS), 1997 WL 458740 (S.D.N.Y. Aug. 12, 1997).

The Supreme Court has explained that the threshold question in a due process challenge to executive action is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). While a number of Circuits have applied this "conscious-shocking" test to claims of due process violations arising from delayed incarceration or re-incarceration following erroneous release from custody,[3] the Second Circuit has not done so. Rather, in the most recent Second Circuit case to address a government error that delayed a defendant's sentence, the Court noted: "A delay in criminal proceedings that 'violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency,' can, depending on the circumstances, constitute a violation of the Due Process Clause." United States v. Ray, 578 F.3d 184, 199 (2d Cir. 2009) (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977)). While Ray involved the due process right to a prompt sentencing, not a delay in the implementation of a sentence, its reasoning is nonetheless instructive. In determining whether a

---

[3] See Espinoza v. Sabol, 558 F.3d 83 (1st Cir. 2009); Bonebrake v. Norris, 417 F.3d 938 (8th Cir. 2005); Hawkins v. Freeman, 195 F.3d 732 (4th Cir. 1999); McPhearson v. Benov, No. 2:09-CV-1889 DAD P, 2014 WL 1794561 (E.D. Cal. May 6, 2014), appeal docketed, No.14-16031 (9th Cir. May 28, 2014).

defendant has been deprived her due process right, the Second Circuit in Ray held that a court must balance "the reasons for the delay" against "the prejudice to the accused." Id.

### 2. Application

In accordance with Ray, I consider "the reasons for the delay," weighed against "the prejudice to the accused." 578 F.3d at 184.

First, I find that the delay here was a result of negligence on the part of Pretrial Services and the government. When the mandate issued on May 3, 2013, an electronic notification was sent to both Pretrial Services and the United States Attorney's Office. But no protocol was in place to trigger the designation process. A clerk at Pretrial Services, not appreciating the significance of the issuance of the mandate, did not alert a supervisor or the Probation Office or anyone else. The United States Attorney's Office did not check to see whether the Probation Office, the Marshals Service, or BOP were notified that a facility should be designated.[4] Moreover, when Tessier-Miller called the United States Attorney's Office on July 2, 2014, it does not appear that anyone returned her call. Similarly, Pretrial Services did not follow up until February 2015.

On the other hand, the conduct here was not intentional or callous, and the failure to designate a facility was largely the result of a clerk's failure to appreciate the significance of the filing of a mandate. I do not find that the failures here rose to the level of gross negligence, nor were they outrageous or egregious, nor do they "shock the conscience." See Lewis, 523 U.S. at 847 n.8.

---

[4] Notification was also sent to defense counsel and the Court, and, indeed, perhaps both could have done more. Careful defense counsel, upon receiving notice of the mandate, could have sought clarification of Nouri's obligation to surrender. With the benefit of hindsight, in the order allowing bail pending appeal, the Court should have provided that in the event BOP failed to designate a facility in a timely manner, the defendant was to report to the Marshals Service.

Second, I consider the prejudice to Nouri. In assessing prejudice, the Second Circuit in <u>Ray</u> considered the length of the delay and the extent to which requiring the defendant to serve her sentence would disrupt her rehabilitation. 578 F.3d at 201. The Court held that the prejudice to <u>Ray</u> was "substantial and demonstrable" because Ray had "undergone what appear[ed] to be a complete rehabilitation" in the fifteen years between the Court's order remanding her case for resentencing and her resentencing date and "[t]o remove her from her current life and compel her to reside for six months in a halfway house would undermine her successful rehabilitation." <u>Id.</u> at 200-01. Here, Nouri has experienced a two-year delay in the execution of his sentence. While he has taken concrete steps toward his rehabilitation -- he has remarried and is a supportive father to his two step-children -- his situation is not comparable to Ray's. Serving his sentence now will not so undermine his rehabilitation that he would be substantially and demonstrably prejudiced. I simply am not persuaded that he has been significantly harmed by the delay in the implementation of his sentence.

Finally, I weigh the reasons for the delay and the prejudice to Nouri in the context of the totality of the circumstances. The cases addressing government errors in the execution of sentences have focused on the length of the delay as an important factor, but there is no bright line rule for how long is too long, as courts often look to the totality of the circumstances. Similarly, the Court in <u>Ray</u> noted that "[e]ven substantial delays in sentencing do not in all circumstances amount to a due process violation." <u>Id.</u> at 202. The Court also emphasized that "[t]he government's negligence is a more neutral reason" when weighing the delay against the prejudice and other factors. <u>Id.</u> (internal quotation marks omitted). Here, I consider the two-year delay due to government negligence and Nouri's partial rehabilitation in the context of other factors. Nouri participated in a conspiracy that caused great financial harm and was convicted by

-10-

a jury for his involvement. Not until sentencing did he express remorse and accept responsibility. In recognition of his more minor role in the enterprise, I gave him a below-Guidelines sentence. He appears to be making strides towards rehabilitation and building family ties, but I cannot say that his rehabilitation is complete. Hence, in balancing these factors under Ray, I find that his is not "an unusual case where the dictates of fundamental fairness clearly compel [me] to conclude that [his] rights were violated." Id. at 202.

For these reasons, the due process claim is rejected.

## B. Credit for Time at Liberty

Nouri argues, in the alternative, that the Court should grant him relief under the common law doctrine of credit for time at liberty.

### 1. Applicable Law

The common law doctrine of credit for time served at liberty was first articulated in White v. Pearlman, 42 F.2d 788, 789 (10th Cir. 1930), where the Court held "that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, . . . his sentence continues to run while he is at liberty." The First Circuit has questioned whether the doctrine of credit for time served at liberty still exists, Espinoza v. Sabol, 558 F.3d 83, 88 (1st Cir. 2009), but I will assume, as did the First Circuit, that the doctrine "still has vitality," id. ("We will assume the federal common law doctrine still has vitality, despite its lack of legislative recognition.").

Nouri argues that "the common law doctrine of credit for time at liberty is alive and well and applies to both mistaken release of prisoners already serving sentences as well as those whose service of sentence is delayed." (Reply Br. at 13). Under the doctrine of credit for time served at liberty, courts have granted defendants credit toward their sentences even in the

absence of a due process violation. See, e.g., Espinoza, 558 F.3d 83; Vega v. United States, 493 F.3d 310 (3d Cir. 2007); Green v. Christiansen, 732 F.2d 1397 (9th Cir. 1984). The Second Circuit has granted credit for time at liberty -- sparingly -- without explicitly discussing the doctrine. See United States v. Greenhaus, 89 F.2d 634 (2d Cir. 1937) (per curiam) (awarding credit for time when defendant was erroneously discharged but not awarding credit for time when defendant was being held in state house of detention resisting order of recommitment); see also Kiendra v. Hadden, 763 F.2d 69, 72-73 (2d Cir. 1985) (awarding credit where the Court intended for defendant's state and federal sentences to run concurrently and federal marshals erroneously refused to accept defendant when he was released from state custody).

Courts have articulated different approaches for applying this doctrine. Some courts have held that credit for time at liberty may be given where a defendant can show mere negligence by the government, so long as the defendant was not at fault in causing the delay in his sentence. See United States v. Martinez, 837 F.2d 861, 865 (9th Cir. 1988); Green, 732 F.2d at 1400; Smith v. Swope, 91 F.2d 260, 262 (9th Cir. 1937); White, 42 F.2d at 789. Other courts have held that credit may only be given where the government intentionally tries to delay imprisonment. See Free v. Miles, 333 F.3d 550, 554 (5th Cir. 2003) (per curiam); Dunne v. Keohane, 14 F.3d 335, 336-37 (7th Cir. 1994). Still other courts employ a burden-shifting framework based on the government's negligence and the defendant's culpability. See Vega, 493 F.3d at 319.[5]

---

[5] Nouri urges the Court to adopt the Third Circuit's burden-shifting test for when a defendant should receive credit for time he was erroneously at liberty. Under the Third Circuit's test, a defendant must first "demonstrate that he has been released despite having unserved time remaining on his sentence." Vega, 493 F.3d at 319. The burden then shifts to the government to prove either "(1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts." Id. I decline to adopt the Third Circuit test.

## 2. **Application**

I decline to award Nouri credit for time served at liberty. I agree with the First Circuit that mere negligence on the part of the government, by itself, is not sufficient to trigger application of the doctrine, and I also conclude that some fault by the government is required.

Rather than adopt a specific test for awarding credit for time served at liberty, I look to the totality of the circumstances, including: the degree of fault on the part of the government; whether the government acted intentionally; the defendant's culpability, if any;[6] whether the sentencing court's intent would be frustrated; the length of the delay; and the prejudice to the defendant. As discussed above, the government and Pretrial Services were negligent in executing Nouri's sentence. Neither the government nor Pretrial Services, however, acted intentionally to delay Nouri's sentence. In addition, Nouri and his counsel could have done more to clarify the status of his obligation to surrender. Granting Nouri credit for time served at liberty would ultimately frustrate the Court's intent that Nouri be punished for his wrongdoing, and I am not persuaded that the two-year delay has significantly harmed Nouri.

There is a fair argument that Nouri should be entitled to credit for time at liberty against his two-year term of supervised release following incarceration. Nouri has remained under supervision by Pretrial Services, reporting to Markowski periodically by telephone and e-mail, and his period of supervision has been extended, in effect, by the delay in the implementation of his sentence. While the government has suggested that it would likely not oppose an application for early termination of supervised release made after Nouri completes his

---

[6] Under the reasoning of Ray, it appears that Nouri was under no obligation to expedite execution of his sentence. 578 F.3d at 200 ("[I]t is not the defendant's duty, or that of her attorney, to see that she is speedily prosecuted and sentenced."). Ray, however, involved a due process claim, while other Second Circuit precedent addressing the doctrine of credit for time at liberty suggests that the defendant's culpability in the delay of his sentence is relevant in deciding whether to award credit. See Greenhaus, 89 F.2d at 635; see also Williams v. United States, 146 F. Supp. 2d 420, 421-22 (S.D.N.Y. 2001).

term of imprisonment, it understandably cannot commit to do so now as it will first need to assess Nouri's behavior while incarcerated. The Court will consider such a motion from Nouri at the appropriate time.

In the meantime, I decline to grant Nouri credit for time at liberty against either his term of incarceration or his term of supervised release.

C.  **Writ of Error Coram Nobis**

Nouri further argues, in the alternative, that the Court should vacate his sentence by issuance of a writ of error coram nobis, pursuant to the All Writs Act, 28 U.S.C. § 1651(a).

1. **Applicable Law**

Relief under a writ of error coram nobis is strictly limited to addressing "errors . . . of the most fundamental character," United States v. Mayer, 235 U.S. 55, 69 (1914), and should only issue "where extraordinary circumstances are present," Nicks v. United States, 955 F.2d 161, 167 (2d Cir. 1992). In the Second Circuit, "[a] petitioner seeking such relief must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996) (alteration omitted) (citations omitted) (internal quotation marks omitted).

2. **Application**

For the reasons discussed above, I do not find the circumstances here to be extraordinary. A two-year delay, within the circumstances here, is not so fundamental an error as to warrant extraordinary relief. Thus, I deny Nouri's request for the issuance of a writ of error coram nobis.

## CONCLUSION

For the reasons set forth above, Nouri's motion for relief under 28 U.S.C. § 2255 is DENIED. It is hereby ORDERED that within forty-five days of this decision, Nouri shall surrender to a facility designated by BOP, and if BOP fails to designate a facility within that time, Nouri shall report to the United States Marshals Service. Because Nouri now resides in California, if he would like me to amend my recommendation that he be designated to F.C.I. Butner, he may send a letter requesting a new recommendation.

SO ORDERED.

Dated:    New York, New York
          June 24, 2015

                                        _____
                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting by Designation